SIGNED this 21st day of November, 2012

_____
Marcia Phillips Parsons
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

In re

|  |  |
|---|---|
| SUSAN H. LUNAN, | No. 08-52584 |
| Debtor. | Chapter 7 |
| LARRY N. LUNAN, |  |
| Plaintiff, |  |
| vs. | Adv. Pro. No. 12-5033 |
| DAVID H. JONES, Chapter 7 Trustee, an individual, KEN PHILLIPS, an individual, and JOHN DOE 1 and 2, |  |
| Defendants. |  |

## M E M O R A N D U M

Appearances:

Larry N. Lunan                              Michael S. Kelley, Esq.
3428 Memorial Boulevard                     550 Main Street, Fourth Floor
Kingsport, Tennessee 37664                  Knoxville, Tennessee 37902
*Pro se*                                    *Attorney for David H. Jones and Ken Phillips*

**Marcia Phillips Parsons, Chief United States Bankruptcy Judge.** In this action removed from state court, the husband of the chapter 7 debtor seeks damages from the debtor's chapter 7 trustee and her court-appointed auctioneer for conversion, intentional infliction of emotional distress, violation of civil rights under 42 U.S.C. § 1983, and violation of due process rights under the Tennessee Constitution. The allegations arise out of the plaintiff's contention that the defendants illegally sold his property and that of his adult children when they sold the debtor's property pursuant to orders of this court.

Presently before the court is the plaintiff's request to remand this suit to state court based on the allegation that removal was untimely and improper. Also before the court is the defendants' motion to dismiss for failure to state a claim upon which relief may be granted based on the *Barton* doctrine, *see Barton v. Barbour*, 104 U.S. 126 (1881), and on the assertion that the defendants are protected by quasi-judicial immunity. As discussed hereafter, the plaintiff's request for remand will be denied and the defendants' motion to dismiss will be granted, the court having concluded that they are protected by immunity. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

## I. The Bankruptcy Case

Susan H. Lunan, (hereinafter "Debtor"), filed a voluntary petition for chapter 11 relief on December 24, 2008. More than nine months later the case was converted to chapter 7 on October 9, 2009, after the Debtor failed to file a chapter 11 plan within the time contemplated by an agreed order. David H. Jones was thereafter appointed chapter 7 trustee ("Trustee").

In her schedules filed shortly after the commencement of her chapter 11 case, the Debtor listed ownership of numerous assets. On Schedule A, the Debtor scheduled three parcels of real property with a total value in excess of $1.5 million, including her residence located at 3520 Orebank Road, Kingsport, Tennessee with a scheduled value of one million dollars. On Schedule B, the Debtor listed personal property of almost seven million dollars, including household furniture, appliances, electronics and lawn equipment valued at $15,000; art and collectibles valued at $50,000; jewelry valued at $25,000; and six Mercedes vehicles with a total value of $491,000.

On March 24, 2009, the Debtor amended Schedule B to increase the stated value of her

2

household furniture, appliances, electronics and lawn equipment to $25,000; to add sporting and hobby equipment valued at $10,000; to add horses valued at $30,000; and to add three additional vehicles, a 2006 Mercedes SL 500, a 1968 Camaro, and a 1981 DeLorean.

After the bankruptcy case's conversion from chapter 11 to chapter 7, the first mortgage holder on the Debtor's residence filed on December 22, 2009, a motion for relief from the automatic stay, alleging that the Debtor had not made any payments on the obligation since the bankruptcy filing and that the outstanding debt against the residence, including two other junior liens, totaled $1,163,993.87. By consent order entered on July 19, 2010, the first mortgage holder agreed to allow the Trustee to market the residence for sale.

On April 21, 2011, two and a half years after the initial bankruptcy filing and more than 18 months after the conversion to chapter 7, the Trustee filed a notice of intent to sell by public auction on June 2, 2011, the Debtor's real property located at 3520 Orebank Road, Kingsport, Tennessee. Also on April 21, 2011, the Trustee filed a notice of intent to sell by public auction on June 2, 2011, the following:

> certain personal property, including, but not limited to, furniture, appliances, dishes, crystal, jewelry, electronics, including televisions, rugs, paintings, lawn equipment, etc., owned by the Debtor. The trustee also intends to sell the following automobiles: "(1) 1968 Camero [sic]; (2) 1981 Delorean; (3) 2006 Mercedes ML 63; (4) 2002 Mercedes ML 55; and (5) 1987 Mercedes 560 SEL.

Both notices stated that the planned public auction of the realty and personalty would be conducted by Ken Phillips, an auctioneer who had been employed by the Trustee on behalf of the estate by order entered January 28, 2010. The Trustee served both notices on the debtor personally, her attorneys and all parties in interest, and stated that any objections to the proposed sales must be filed within 21 days as contemplated by E.D. Tenn. LBR 9013-1(h). No objections or responses were filed to either of the notices.

On May 7, 2011, the Trustee filed a motion to compel the Debtor to turn over to the Trustee the Debtor's personal property that the Trustee had noticed for sale, and scheduled a May 24, 2011 hearing on the motion. On the morning of the scheduled hearing, the Debtor filed an objection to the Trustee's turnover motion. Notwithstanding her previous failure to object to the Trustee's notice

of intent to sell her personal property, the Debtor stated that she opposed the planned auction because it would result in less than fair value being paid for her assets, she had a friend who would assist her in obtaining a bank loan to pay her unsecured debt, and selling just a portion of her personalty would be sufficient to pay her debts in full, with the exception of one claim which was otherwise subject to setoff.  The Debtor also stated that she needed her vehicles for transportation, and that some of the personal property in the residence that the Trustee was planning to sell was the sole property of her husband, belonged to her son, or was jointly-held property.  Specifically, the Debtor asserted that certain artwork belonged to her husband, and attached to her objection receipts or certificates of ownership for the artwork.  Also attached to the objection were two appraisal certificates for some jewelry items which listed both the Debtor and her husband as owners of the jewelry.  Lastly, the Debtor requested in the objection that the 1981 DeLorean be removed from her list of property because it had been purchased by her husband prior to their marriage and her name added to the title for insurance purposes.

The Debtor, her attorney, and her husband Larry N. Lunan appeared at the May 24, 2011 hearing, as did the Trustee.  In a proffer of proof, the Trustee stated that shortly after the case converted to chapter 7, he and Mr. Phillips met with the Debtor at her residence and questioned her as to who owned the furniture, artwork, jewelry, and vehicles located there and she advised that she did.  The Trustee also stated that the debtor and her attorney had indicated at that time that the debtor wanted to pay off her unsecured creditors to avoid having her assets sold, so the Trustee advised her as to the amount necessary to pay unsecured claims and administrative expenses.  The Trustee stated that after that meeting he waited over a year for the Debtor to come up with the necessary funds to pay unsecured creditors, and when she failed to do so, noticed the assets of the estate for sale.  The Trustee objected to the Debtor's last-minute attempt to stop the planned sale by claiming that some of the property belonged to others, but stated that he had no desire to sell Mr. Lunan's property, and that he had advised Mr. Lunan to remove his personal property from the residence before the planned auction.  In response, the Debtor did not contradict the Trustee's statements, but stated that she had recently come across some receipts that indicated that her husband had purchased some of the artwork that she had listed in her schedules.  The Debtor also stated that one of the Mercedes was in both her and her husband's names, that her husband had purchased the DeLorean automobile prior

4

to their marriage although title was in both of their names, and that one of the Mercedes actually belonged to her son, although titled in her name.  The Debtor indicated that she planned to amend her schedules, consistent with these statements.

At the conclusion of the hearing, the court overruled the Debtor's objection to turnover and granted the Trustee's motion.  The court cited the fact that the case had been pending in chapter 7 for more than a year and a half, such that the Debtor had had ample opportunity to make other arrangements to pay off her unsecured creditors and avoid a sale of her assets.  Similarly, as to ownership of her scheduled assets, the court noted that the Debtor had scheduled all personal property as being solely owned by her when she first filed for bankruptcy relief two and a half years previously, that she had continued to list these assets as her property in the eight monthly operating reports that she had filed while she was in chapter 11, and that she had not amended her schedules to state otherwise, despite having ample opportunity to do so.[1]  The court observed that the mere fact that Mr. Lunan may have purchased the artwork did not make it solely his, as it could have been a gift to the Debtor or to the household.  Lastly, the court cited the Debtor's unexplained failure to object to the Trustee's prior notice of intent to sell.

Consistent with the ruling announced by the court at the conclusion of the May 24, 2011 hearing, the court entered an order on June 1, 2011, granting the Trustee's motion to compel turnover.  The order stated in part the following:

It is, therefore, ORDERED that:

1.  The Trustee's Motion to Compel Debtor to Turn Over Property to the Trustee is hereby granted in its entirety.

2.  All of Larry Lunan's personal property, including pets, and all of the Debtor's clothing and wearing apparel and pets shall be removed from the Debtor's

---

[1] The court now sees that this statement was partially erroneous.  In her amended Schedule B filed March 24, 2009, the Debtor indicated that the DeLorean and six of the Mercedes vehicles were jointly owned.  All other scheduled personalty was listed as the Debtor's sole property, as it had been listed in the Debtor's original schedules.  No reference was made by either party to the amended Schedule B at the May 24, 2011 hearing.

5

residence located at 3540[2] Orebank Road, Kingsport, TN 37664 (the "Residence") by midnight May 30, 2011. All of the Debtor's remaining personal property, including but not limited to, household furniture, including living area furniture, bedroom furniture, dining room furniture, etc., appliances, dishes, crystal, electronics, including televisions, rugs, lawn equipment, lamps, patio furniture and grills, pool furniture, decorative items, and all artwork and paintings, including but not limited to, the following (1) Caprinas Venice; (2) Newport Beach Regatta; (3) By the Pool; (4) A Still Life of Wine Bottles; (5) Parisan Street Scene; (6) Paris Poster; and (7) Cote D'Azur shall remain at the Residence and be subject to being sold at the June 2, 2011 auction (the "Auction"). Further, the Debtor shall immediately turn over to the Trustee, or his designated representative, all of her jewelry, including but not limited to, two (2) 14kt white gold diamond rings; Oyster Perpetual Lady Rolex watch; 14kt gold bracelet; and, two (2) 14 kt gold three stone rings for sale at the Auction.

3.    The Debtor shall immediately turn over to the Trustee, or his designated representative, for sale at the Auction the following automobiles, along with the titles, and keys; (1) 1968 Camaro; (2) 1987 Mercedes 560 SEL; (3) 1981 Delorean; and (4) 2007 Mercedes ML 63. Further, the Debtor shall immediately turn over to the Trustee, or his designated representative, any other automobiles, along with the titles, and keys, that were titled in the Debtor's name only at the time of her bankruptcy filing for future sale by the Trustee, if necessary.

On June 25, 2011, the Trustee filed a motion for authority to sell the real property located at 3520 Orebank Road, Kingsport, Tennessee free and clear of liens pursuant to 11 U.S.C. § 363, stating that a contract for the sale of the realty had been entered into at the June 2, 2011 auction. The motion set a July 12, 2011 hearing, and was served on the Debtor, her attorneys, and all parties in interest. No objection or other response was filed to the motion, and no party appeared at the hearing in opposition to the motion. Accordingly, the court entered an order on July 14, 2011, granting the motion.

On July 25, 2011, the Trustee filed a motion to compel the Debtor and her family to vacate the property located at 3520 Orebank Road, Kingsport, Tennessee so that it could be turned over to its purchaser. A hearing on this motion was set for August 9, 2011. The Debtor filed an objection to the motion, asserting that the court could not compel her and her family, which included her husband and two adult children, to vacate the residence. The objection did not address why the

_____

[2] It appears that this number was a typographical error as the Debtor's residence was located at 3520 Oreback Road, Kingsport, Tennessee.

Debtor had not previously objected to the sale of the residence despite two prior opportunities to do so.  At the conclusion of the scheduled hearing, this court overruled the Debtor's objection, and granted the Trustee's motion by order entered August 10, 2011.

The Debtor appealed three orders of the court: the June 1, 2011 order compelling her to turn over her personal property to the Trustee, the June 14, 2011 order granting the Trustee's motion to sell her residence free and clear of liens, and the August 10, 2011 order directing the Debtor and her family to vacate her residence so that it could be turned over to the purchaser.  On March 26, 2012, and July 24, 2012 respectively, the United States District Court for the Eastern District of Tennessee dismissed the appeal of the orders compelling the turnover of the Debtor's personal property and approving the sale of the Debtor's residence free and clear of liens.  The district court concluded that the Debtor did not have standing to appeal because she was not a person aggrieved by the bankruptcy court orders.  Also on July 24, 2012, the district court dismissed the Debtor's appeal of the order directing her to vacate her residence, citing her failure to provide a transcript of the bankruptcy court proceeding as part of the record on appeal as required by Federal Rule of Bankruptcy Procedure 8006.  The Debtor then further appealed all three orders to the United States Court of Appeals for the Sixth Circuit, where the appeals are currently pending.

## II. The State Court Action

On June 4, 2012, Larry Lunan, *pro se*, ("Plaintiff") filed a civil action in the Circuit Court of Sullivan County, Tennessee against the Trustee.  The Plaintiff thereafter amended the complaint on June 28, 2012, to add Mr. Phillips and two "John Doe" defendants.  The Plaintiff alleges that the Trustee, instead of utilizing an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001 and a hearing under 11 U.S.C. § 363,[3] illegally and for personal gain used a motion to compel

---

[3] Section 363(h) of the Bankruptcy Code provides that "the trustee may sell both the estate's interest . . . and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if . . . [four specified requirements are met].").  11 U.S.C. § 363(h).  Federal Rule of Bankruptcy Procedure 7001(3) lists "a proceeding to obtain approval under § 363(h) for the sale of both interests of the estate and of a co-owner in property" as an adversary proceeding.  If a third party is a co-owner with the estate in estate property, a trustee must initiate an adversary proceeding (continued...)

turnover to obtain control of Plaintiff's property and that of his adult children, as well as property Plaintiff jointly owned with the Debtor. The Plaintiff further alleges that he pointed out his separate property to the Trustee and advised him that there was a second dwelling on the Debtor's real property that belonged solely to him, but the Trustee falsely represented to the bankruptcy court at the May 24, 2011 hearing that he had no prior knowledge of any ownership claims by anyone other than the Debtor, thereby committing fraud upon the court. The Plaintiff also alleges that on the morning of the auction he requested permission from the Trustee to withdraw his personal property from the residence, but the Trustee denied his request and threatened to charge the Debtor and the Plaintiff with bankruptcy fraud if they removed any property. Lastly, the Plaintiff alleges that the Trustee and Mr. Phillips ("Defendants") did not provide security on the day of the sale such that sentimental items were stolen, that Mr. Phillips adjusted the thermostat and opened the windows causing the electric bill paid by Plaintiff to be higher than normal, and that Mr. Phillips absconded with Plaintiff's moving dolly and extension cords.

Based on these factual allegations, the amended complaint sets out nine counts for relief for which the Plaintiff seeks a disgorgement of funds obtained by the Defendants, an accounting, and damages. Specifically, in the first eight counts, the Plaintiff alleges that the Trustee with willful malice: (1) denied the Plaintiff due process under the Tennessee Constitution, Article 1, Section 8; (2) violated the Plaintiff's civil rights under 42 U.S.C. § 1983; (3) converted the Plaintiff's personal property, including eight works of art, in violation of Tenn. Code Ann. §§ 39-14-103 and 40-13-221, criminal statutes against theft and embezzlement, respectively; (4) converted personal property in which the Plaintiff had a joint interest, including the 1981 DeLorean, 1987 Mercedes, 1968 Camaro, and certain jewelry purchased for the Debtor, in violation of the same state law criminal statutes; (5) confiscated and converted in violation of state law personal property belonging to the Plaintiff's two adult children that was located at the Debtor's residence; (6) committed a fraud on the bankruptcy court by giving false testimony; (7) violated Tenn. Code Ann. § 39-14-112, the extortion

---

[3](...continued)
and satisfy § 363(h) if the trustee desires to sell the interests of both, absent the agreement of the co-owner. *See* 3 *Collier on Bankruptcy* ¶ 363.08[1] (16th ed. 2012) ("The trustee must seek authority for such a [§ 363(h)] sale by an adversary proceeding on notice to the co-owner.").

criminal statute, by converting Plaintiff's property through the use of extortion and threats of criminal liability for bankruptcy fraud; and (8) intentionally inflicted emotional distress in violation of Tenn. Code Ann. § 39-17-309, which addresses the criminal offense of intimidating others from exercising their civil rights, and "T.P.I. CIVIL, 4.35," the Tennessee Pattern Jury Instruction for the tort of intentional infliction of emotional distress. In the last count of the amended complaint, the Plaintiff alleges that the Trustee conspired with Mr. Phillips and potentially others,[4] "to liquidate for gain the converted property" in violation of Tenn. Code Ann. § 39-12-103, the criminal offense of conspiracy.

### III.  This Adversary Proceeding

On August 3, 2012, the Defendants filed a Notice of Removal, removing the Plaintiff's state court action to this court. In the Notice, the Defendants state that removal was proper pursuant to 28 U.S.C. §§ 1441(b),[5] 1442(a)(3), and 1452(a). Additionally, the Defendants state that this is a core proceeding pursuant, in part, to 28 U.S.C. § 157(b)(2)(A) and (O). Alternatively, the Defendants assert that this is a related proceeding pursuant to 28 U.S.C. § 157(c)(1).

---

[4] The "others" likely refers to the two John Doe defendants. The record reflects that the Plaintiff has neither amended his complaint to identify the two John Doe defendants nor served anyone other than the Trustee and Mr. Phillips. Because more than 120 days have elapsed since the filing of the amended complaint without service on the John Doe defendants, the complaint is subject to dismissal as to the John Doe defendants pursuant to Federal Rule of Civil Procedure 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."). *See Nicholson v. City of Chattanooga*, 1:04-cv-168, 2005 WL 2657001 (E.D. Tenn. Oct. 18, 2005) (dismissing John Doe defendants not identified and served within 120 days from filing of complaint).

[5] This section pertains to removal based on diversity of citizenship, which would appear to have no applicability to the case at hand. The Defendants cite § 1441(b) as their basis for federal jurisdiction not only in their Notice of Removal but also in their memorandum in opposition to Plaintiff's remand motion. Section 1441(c) of title 28, which addresses joinder of federal and state law claims, would appear to be the more appropriate section. The Defendants' mistake is not fatal because removal was otherwise proper under 28 U.S.C. § 1452(a), an alternative basis for removal cited by Defendants in their Notice of Removal, as discussed in the body of this opinion.

On August 13, 2012, the Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiff was required by the *Barton* doctrine to seek leave of this court prior to filing the state court action.  *See Barton v. Barbour*, 104 U.S. 126 (1881).  Alternatively, the Defendants argue that dismissal is required because their actions were protected by quasi-judicial immunity.

In response, the Plaintiff filed on September 4, 2012, an "Objection/Response to the Notice of Removal Filed by David Jones on August 3, 2012," and an "Objection/Response to the Motion to Dismiss Filed by David Jones on August 13, 2012," which the Plaintiff thereafter revised on September 25, 2012.  In these documents, the Plaintiff asserts that this adversary proceeding should be remanded because removal was untimely under 28 U.S.C. § 1446(b), and inappropriate because there is no federal question jurisdiction under 28 U.S.C. § 1441(b), this is not a core proceeding, and suits against a trustee involving *ultra vires* acts or commenced under 11 U.S.C. § 323 need not be brought in bankruptcy court.  Alternatively, the Plaintiff argues that discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) is appropriate.  Further, the Plaintiff opposes the motion to dismiss, asserting that neither the *Barton* doctrine nor immunity applies because the Defendants' actions were *ultra vires*, outside the scope of their authority.  In reply, the Defendants filed additional memoranda of law in opposition to Plaintiff's remand request and in further support of their dismissal motion.  Each of the issues raised by these filings will be addressed in turn.

IV.  <u>The Pending Motions</u>

A. *Removal of the Plaintiff's State Court Action*

The Plaintiff's first argument in support of remand is that the Defendants' removal of this action was untimely under 28 U.S.C. § 1446(b).  This provision states, in part, that:

> [t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1).  From its wording, § 1446(b) appears to indicate that mere "receipt" of either the complaint or summons is sufficient to start the running of the 30-day removal period,

irrespective of the technicalities of service of process requirements. In fact, prior law held as much. *See Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 967 (6th Cir. 1993). However, in 1999, the United States Supreme Court ruled that formal process is required, and that a "defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). Thus, under the facts of that case, a faxed courtesy copy of the filed-stamped complaint was insufficient to start the 30-day removal clock. *Id.* In light of the *Murphy Brothers* decision, the district court for this district has concluded that mere receipt of the complaint alone or actual knowledge of the lawsuit is no longer sufficient. *See Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d. 924, 927-28 (E.D. Tenn. 2002). Similarly, the court of appeals for this circuit, albeit in an unpublished decision, has recognized that the 30-day period for removal under § 1446(b) runs from formal service of both the summons and complaint on each defendant. *See Campbell v. Johnson*, 201 F.3d 440, *2 (6th Cir. 1999) (table opinion) (citing *Murphy Bros.*, 119 S.Ct. 1322, 1329 (1999)).

In the present case, the Notice of Removal was filed on August 3, 2012. The Plaintiff asserts that the filing was untimely because the Defendants had actual or constructive notice of the state court lawsuit more than thirty days before, on June 29, 2012. As support for this factual assertion, the Plaintiff cites an email communication dated that day between an assistant United States trustee and the Trustee about the lawsuit, and an unsubstantiated alleged statement by an attorney for the United States trustee to the Debtor's former attorney that Ken Phillips had been served on or before July 2, 2012. In response, the Defendants assert that removal was timely, and reference returns of service which indicate that the complaint and summons were formally served by a Sullivan County deputy sheriff on Mr. Phillips on July 9, 2012, and on the Trustee on July 11, 2012.

Although the Plaintiff's allegations support knowledge of the state court suit more than 30 days prior to the filing of the notice of removal, they do not establish when the Defendants were actually served with both the complaint and summons. The only evidence of such service is the returns of service signed by the deputy sheriff, which indicate that formal service occurred within the 30-day period preceding the notice of removal filing on August 3, 2012. Accordingly, Plaintiff's

11

argument that the Notice of Removal was untimely under 28 U.S.C. § 1446(b) must be rejected.

The court turns next to Plaintiff's argument that remand is required because removal was inappropriate. The Plaintiff's first assertion in support of this contention is that there is no federal question jurisdiction. The Plaintiff acknowledges that one of his claims is for a violation of his federal civil rights under 42 U.S.C. § 1983, but points out that it is only one claim and argues that it is "not an essential element."

The court agrees that federal question jurisdiction is not an appropriate basis for removal of Plaintiff's state court action to this court. Granted, Plaintiff's 42 U.S.C. § 1983 claim is a claim arising under the laws of the United States as contemplated by the removal provisions of 28 U.S.C. § 1441(c). *See Jennings v. City of Lafollette*, No. 3:09-cv-72, 2009 WL 971686, *1 (E.D. Tenn. April 8, 2009). However, a district court's jurisdiction over federal questions such as plaintiff's civil rights claim is derived from 28 U.S.C. § 1331. There is no statutory authority for a district court to refer 28 U.S.C. § 1331 actions to bankruptcy courts. *Cf. Home Cable Concepts, Inc. v. Seale (In re Best Reception Sys., Inc.)*, 219 B.R. 980, 984 (Bankr. E.D. Tenn. 1998) (providing similar analysis within the context of 28 U.S.C. § 1332(a)'s diversity jurisdiction). The referral permitted by the district court to the bankruptcy court under 28 U.S.C. § 157(a) is limited to matters within the district court's bankruptcy jurisdiction under 28 U.S.C. § 1334. *See id.* at 983-84.

The Defendants' removal of the state court lawsuit to this court, however, was not based solely on the federal question removal statute. Rather, the Defendants also cite both 28 U.S.C. §§ 1442(a)(3) and 1452(a). As to the latter, § 1452(a) provides that, "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Pursuant to 28 U.S.C. § 1334(a), "the district courts shall have original and exclusive jurisdiction of all cases under title 11," and under § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." In other words, the federal district court has exclusive jurisdiction over bankruptcy cases and non-exclusive jurisdiction over all civil proceedings connected with the bankruptcy cases. Section 1334 evidences the intent of Congress to bring all bankruptcy-related

matters within the jurisdiction of the federal court.  1 *Collier on Bankruptcy* ¶ 3.01[3] (16th ed. 2012).

For purposes of determining whether bankruptcy jurisdiction exists, it is not necessary to distinguish between the "arising under," "arising in," and "related to" categories of § 1334(b). *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir. 1991).  Instead, "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Id.* (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987)).  The scope of "related to" jurisdiction is expansive in that "[t]he usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 1141-42 (quoting *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir. 1984)).

Undeniably, the Plaintiff's various claims asserted in the state court complaint fall within the scope of "related to" jurisdiction.  Every claim pertains to the Defendants' conduct while they were administering the assets of the bankruptcy estate under the authority of, and pursuant to the orders of the bankruptcy court.  The Plaintiff seeks a disgorgement of funds the Defendants received in their official capacities as the chapter 7 trustee and court-appointed auctioneer, and damages for the conduct that the bankruptcy court ordered – turnover and sale of specified property.  In effect, the Plaintiff seeks a reexamination of the very orders of the bankruptcy court, and of the conduct of the Defendants that not only led to those orders, but their actions in carrying out the court's orders.  Clearly, to the extent that a reviewing court would determine that the bankruptcy court's orders were improper, that the Trustee utilized the wrong bankruptcy procedure and/or committed a fraud on the bankruptcy court, or that the Defendants are required to disgorge funds received by them in their official capacities, Plaintiff's claims will have an impact on the bankruptcy estate such that the court has bankruptcy jurisdiction under 28 U.S.C. § 1334.  Accordingly, removal of this action was proper under § 1452(a).[6]

---

[6] Having reached this conclusion, it is unnecessary for this court to determine whether removal was also authorized under 28 U.S.C. § 1442(a)(3), an alternative removal basis cited by the Defendants in their Notice of Removal.

Moreover, under the facts at hand, the court is confident that it not only has jurisdiction over the instant proceeding as a related matter, but also as a core proceeding. As explained by the Sixth Circuit, "[a] core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992) (citing *In re Wolverine Radio*, 930 F.2d at 1144). In determining whether a particular proceeding is a core proceeding, the bankruptcy judge must consider "both the form and substance of the procedure in making its determination." *Id.* Additionally, "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

In the present case, the genesis of Plaintiff's complaints against the Defendants is the Debtor's bankruptcy case. 28 U.S.C. § 157(b)(2) includes in the list of core proceedings "(A) matters concerning the administration of the estate; . . . [and] (O) other proceedings affecting the liquidation of the assets of the estate . . . ." 28 U.S.C. § 157(b)(2)(A) and (O). Even if the facts as alleged by the Plaintiff are true, all of the actions taken by the Defendants of which the Plaintiff complains were in the context of administering the estate and liquidating the estate's assets. Accordingly, the Plaintiff's claims against the Defendants constitute a core proceeding.

This conclusion is supported by decisions of the Sixth Circuit Court of Appeals involving analogous facts. In *Sanders Confectionery Products*, the court held that the plaintiff's claims against the bankruptcy trustee for lender liability, common law fraud, RICO violations, and securities law claims were core proceedings because they related to his conduct in administering assets of the bankruptcy estate. *See Sanders Confectionery Prods.*, 973 F.2d at 483 n.4. As stated by the court, "[w]hile the specific causes of action, such as RICO, exist independently of bankruptcy cases, an action against a bankruptcy trustee for the trustee's administration of the bankruptcy estate could not." *Id.*

Similarly, in *In re Lowenbraun*, the spouse of the chapter 7 debtor sued the trustee's attorney in state court, alleging libel, slander, abuse of process and outrageous conduct, arising out of contempt proceedings filed against the couple and an interview that counsel had given to a local newspaper in which he suggested that the debtor and his spouse had committed bankruptcy fraud.

14

*Lowebraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 319 (6th Cir. 2006).  The Sixth Circuit concluded that the action was a core proceeding "because the genesis of her state-law action was the bankruptcy proceeding."  *Id*. at 321.  *See also Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1437-38 (9th Cir. 1995) ("postpetition state law claims asserted by or against a trustee in bankruptcy or the trustee's agents for conduct arising out of the sale of property belonging to the bankruptcy estate qualify as core proceedings"); *Kirk v. Hendon (In re Heinsohn)*, 247 B.R. 237, 244 (E.D. Tenn. 2000) (plaintiff's suit asserting malicious prosecution and defamation claims against the bankruptcy trustee was a core proceeding because the conduct about which the plaintiff complained "would not have arisen but for Defendant's obligations and conduct as a trustee").

The Plaintiff's last two arguments as to why removal was improper are that the acts of the Defendants were *ultra vires*, that is, outside the scope of their authority, and that § 323 of the Bankruptcy Code authorizes a suit against the trustee but does not expressly require that the action be brought in bankruptcy court.  *See* 28 U.S.C. § 323(b) ("The trustee in a case under this title has capacity to sue and be sued.").  Because both assertions involve consideration of the *Barton* doctrine, as Plaintiff's filings recognize, the court will move to consideration of that issue.

### B. *Defendants' Motion to Dismiss*

### 1. The Standard

Federal Rule of Civil Procedure 12(b)(6), applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7012(b), provides that complaints may be dismissed for "failure to state a claim on which relief can be granted."  In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  Determining whether a claim for relief is plausible is a "context-specific task" requiring the court "to draw on its judicial experience and common sense."  *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* at 678.

2. The *Barton* Doctrine

The Defendants assert that this action must be dismissed because the Plaintiff failed to seek approval from this court before suing them as required by the *Barton* doctrine. "Under the *Barton* doctrine, 'leave of the bankruptcy forum must be obtained by any party wishing to institute an action in a state forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court.'" *Heavrin v. Schilling (In re Triple S Restaurants, Inc.),* 519 F. 3d 575, 578 (6th Cir. 2008) (quoting *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993)). *See also Barton v. Barbour*, 104 U.S. 126, 127 (1872) ("It is a general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained."). This principle applies not only to a bankruptcy trustee but also to those individuals who are the "functional equivalent of a trustee." *See In re DeLorean Motor Co.*, 991 F.2d at 1241. "[C]ourt appointed officers who represent the estate are the functional equivalent of a trustee [where] they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets." *Id.* (citing *In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (B.A.P. 9th Cir. 1989)). It has been recognized that court appointed auctioneers fall within this "functional equivalent" definition. *See Carter v. Rodgers*, 220 F.3d 1249, 1251-53 (11th Cir. 2000); *Equip. Leasing, LLC v. Three Deuces, Inc.*, No. 10-2628, 2011 WL 6141443, *3 (E.D. La. Dec. 9, 2011). Consequently, the Plaintiff was required by the *Barton* doctrine to seek this court's approval prior to suing the Defendants in state court if he is suing them for "acts done in [their] official capaciti[es] and within [their] authority as . . . officer[s] of the court." *See In re Triple S Restaurants, Inc.,* 519 F.3d at 578.

The factual allegations of the Plaintiff's amended complaint readily establish this standard. Under § 704(a)(1) of the Bankruptcy Code, the primary task of a chapter 7 trustee is collecting and reducing to money the property of the estate. *See* 11 U.S.C. § 704(a)(1). Thus, the Trustee was acting in his official capacity and within his authority as an officer of the court in filing notices of intent to sell and motions for turnover, and in conducting an action of estate property, even if the Trustee utilized an incorrect statutory procedure or filed the wrong type of motion as the Plaintiff alleges. Similarly, Mr. Phillips as the court appointed auctioneer for the estate was acting at the direction of the Trustee for the purpose of administering the estate by conducting the estate auction.

Lastly, and most significantly, the Defendants were acting pursuant to orders of this court in selling the assets at issue, even if they belonged to the Plaintiff or his adult children as he alleges.[7]  *See Novak v. Clark*, No. 03-4136-JAR, 2004 WL 1293249, *2-3 (D. Kan. June 4, 2004) (because trustee was administering assets of the estate in his official capacity, *Barton* doctrine applied to debtor's state court lawsuit against the chapter 7 trustee despite claim that sale of vehicle was fraudulent and a fraud on the bankruptcy court).

Notwithstanding the foregoing, the Plaintiff asserts that the *Barton* doctrine is not applicable for two reasons.  First, citing *Lambert v. Schwab (In re Lambert)*, 438 B.R. 523 (Bankr. M.D. Pa. 2010),  the Plaintiff argues that a bankruptcy trustee is not actually appointed by the bankruptcy court  under current law, such that the policy considerations supporting the *Barton* doctrine no longer apply.  Second, the Plaintiff maintains that the Defendants' alleged conversion of his assets was *ultra vires* or outside of their official capacities, which has been long recognized as an exception to the doctrine. *See Barton v. Barbour*, 104 U.S. at 134 (analogizing the position of a receiver to that of a assignee in bankruptcy and stating "if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting *ultra vires*").  In support of this proposition, the Plaintiff cites *Leonard v. Vrooman*, 383 F.2d 556 (9th Cir. 1967); *Teton Millwork Sales v. Schlossberg*, 311 Fed. Appx. 145 (10th Cir. 2009); and *Henkel v. Lickman (In re Lickman)*, 297 B.R. 162 (Bankr. M.D. Fla. 2003).

As to Plaintiff's first argument, the bankruptcy court in *Lambert* did conclude that the common-law *Barton* doctrine did not survive enactment of the Bankruptcy Code of 1978 because

---

[7] Although unnecessary to resolve in light of the court's dismissal of this action, the court questions whether the Plaintiff has standing to raise the *ultra vires* exception with regard to the property of his adult children.  *See Bowers v. Banks (In re McKenzie)*, 473 B.R. 274, 284 (Bankr. E.D. Tenn. 2012) ("the standing to raise the *ultra vires* exception to the *Barton* doctrine requires the aggrieved party to be the owner of the property tortiously taken").  Although the Plaintiff asserts that he had "custody" of his adult children's personalty, custody is not ownership.  *See Black's Law Dictionary* (9th ed. 2009) ("The care and control of a thing or person for inspection, preservation, or security.").

bankruptcy courts no longer appoint the trustee, *see* 11 U.S.C. § 701(a)(1),[8] and because § 323 of the Bankruptcy Code provides that the trustee in a bankruptcy case has the capacity to be sued but does not mention prior court approval.  *See In re Lambert*, 438 B.R. at 525-26.  More recently, however, the Third Circuit Court of Appeals has expressly rejected *Lambert* and affirmed the continued validity of the *Barton* doctrine under the Bankruptcy Code for bankruptcy trustees.  *See In re Vistacare Grp., LLC*, 678 F.3d 218, 231-32 (3d Cir. 2012); *see also Carter v. Rodgers*, 220 F.3d at 1252 n.4 (concluding that it was irrelevant for *Barton* doctrine purposes that defendants were court "approved" rather than court "appointed").  More importantly for this court, *Lambert* is in direct conflict with controlling Sixth Circuit precedent.  On three separate occasions the court has recognized the continued viability of the *Barton* doctrine for bankruptcy trustees under the Bankruptcy Code.  *See In re Triple S Restaurants, Inc.,* 519 F.3d at 578;  *In re Lowenbraun*, 453 F.3d at 322;  *In re DeLorean Motor Co.*, 991 F.2d at 1240.  Accordingly, the Plaintiff's *Lambert* argument must be rejected.

The Plaintiff's second argument is that the Defendants' actions were *ultra vires* or outside the scope of their authority such that permission from the bankruptcy court to bring suit was not required.  According to Plaintiff, the Defendants' actions were *ultra vires* because they were not authorized to convert his assets, to intentionally inflict emotional distress, or to violate his rights under state and federal law.

The Sixth Circuit has stated that there is "a presumption that acts were a part of the trustee's duties unless Plaintiff initially alleges at the outset facts demonstrating otherwise."  *In re Lowenbraun*, 453 F.3d 322 (quoting *In re Heinsohn*, 247 B.R. at 246).  This presumption prevents plaintiffs "from making unsupported allegations in an attempt to defeat Congress's goal of providing exclusive federal jurisdiction over bankruptcy matters."  *Id.*

---

[8] Under current law, after the order for relief under chapter 7, the United States trustee appoints an interim trustee that is a member of the panel of private trustees established under 28 U.S.C. § 586(a)(1).  *See* 11 U.S.C. § 701(a)(1).  The service of an interim trustee terminates when a trustee is elected at a meeting of creditors.  *See* 11 U.S.C. § 701(b).  If the creditors do not elect a chapter 7 trustee at the meeting of creditors as permitted by 11 U.S.C. § 702(b), "then the interim trustee shall serve as trustee in the case."  11 U.S.C. § 702(d).

While this court understands the point being made by the Plaintiff in this regard, the fact remains that the Defendants took possession of and sold the assets in question and, if true, threatened the Plaintiff with a charge of bankruptcy fraud, all in the course of carrying out their official duties. The Plaintiff's allegations of fraud or malfeasance by the Defendants do not alter this conclusion. For example, in *Satterfield v. Malloy*, No. 10-CV-03-TCK-FHM, 2011 WL 2293940 (N.D. Okla. June 8, 2011), the plaintiff sued the chapter 7 trustee, alleging a violation of 42 U.S.C. § 985(2), a violation of his First and Fifth Amendment rights, breach of fiduciary duty and civil conspiracy, all arising out of the trustee's course of conduct as bankruptcy trustee.   When the chapter 7 trustee moved to dismiss based on the *Barton* doctrine, the plaintiff asserted the *ultra vires* exception because the complaint alleged that the trustee was guilty of unlawful and improper acts.   The court rejected this argument, concluding that the allegations of misconduct did not necessarily place the chapter 7 trustee's actions outside the scope of the trustee's authority.   "Because the essence of such allegations relates to [d]efendant's execution of his duties as trustee, the *ultra vires* exception does not apply." *Id.* at *4.

Similarly, in *Lawrence v. Goldberg*, 573. F.3d 1265, 1271 (11th Cir. 2009), the plaintiff sued the chapter 7 trustee and the trustee's professionals alleging that they had colluded to enforce a turnover order that the bankruptcy court had improperly entered, and otherwise had unlawfully brought assets into the bankruptcy estate.   Based on these allegations, the plaintiff asserted violations of the federal wiretapping laws, RICO, the Fair Debt Collection Practices Act, and federal and constitutional rights under 42 U.S.C. § 1983.   *Id.* at 1268.   Notwithstanding these claims, the Eleventh Circuit Court of Appeals concluded that the lawsuit fell within the *Barton* doctrine because the defendants had performed the challenged actions, locating estate assets and enforcing the bankruptcy court's turnover order, in their official capacities.   *Id.* at 1270.

In *Novak v. Clark*, the plaintiff sued the chapter 7 trustee and his attorney, alleging that they had committed a fraud on the bankruptcy court by "knowingly, intentionally, and fraudulently" submitting an order for a sale of an automobile owned by the debtor's father rather than the debtor, thereby violating the plaintiff's Fourteenth Amendment rights to due process. The district court concluded that the suit was filed in violation of the *Barton* doctrine, because in selling the automobile the trustee had acted in his official capacity and pursuant to an order of the bankruptcy

19

court. *Novak v. Clark*, 2004 WL 1293249, at *2. *See also Giovanazz v. Schuette*, No. 09-0496
AHM, 2009 WL 649187, at *4 (C.D. Cal. March 10, 2009) (*Barton* doctrine precluded suit against
chapter 7 trustee and his counsel where allegations arose directly from and were based entirely on
their actions to secure assets of the bankruptcy estate; complaint that alleged defendants operated
a scam of taking property *ex parte* and *ultra vires* without a factual foundation or evidentiary support
failed to state a claim).

Additionally, decisions by the Sixth Circuit Court of Appeals demonstrate the correctness
of the conclusion that mere allegations of improper conduct by a trustee do not take the claims
outside the *Barton* doctrine. In *Lowenbraun*, as previously discussed, the debtor's spouse sued the
chapter 7 trustee's attorney in state court for libel, slander, abuse of process and outrageous conduct.
*In re Lowenbraun*, 453 F.3d at 319. Upon removal of the lawsuit to the bankruptcy court, the spouse
argued that the *Barton* doctrine did not apply because counsel had acted outside the scope of his
authority, and had "intentionally concocted false allegations against [the spouse] to hide his own
negligence." *Id.* at 322. The bankruptcy court rejected this argument and the Sixth Circuit Court
of Appeals affirmed, concluding that the allegation that counsel's actions were prompted by
improper motives was insufficient to undermine application of the *Barton* doctrine, as counsel had
been acting to recover missing estate assets. *Id.* Similarly, in *Triple S Restaurants* the court of
appeals concluded that a suit arising out of the chapter 7 trustee's alleged threat to report the plaintiff
to the United States Attorney for criminal charges fell within the scope of the trustee's duties for
*Barton* doctrine purposes as a trustee has a duty under 18 U.S.C. § 3057(a) to report any criminal
activity related to the bankruptcy proceeding. *In re Triple S Restaurants, Inc.*, 519 F.3d at 578.

The cases cited by the Plaintiff in support of his contention that the acts of Defendants were
*ultra vires* and thus outside the scope of the *Barton* doctrine do not involve analogous facts or
support the opposite conclusion. In *Leonard*, the trustee's conduct was found to be *ultra vires* where
he, without court order, took possession of property that he believed that the debtor had fraudulently
conveyed prior to the filing of the bankruptcy case. *Leonard v. Vrooman*, 383 F.2d at 561. Noting
that the debtor in that case had not scheduled the seized property as property of the estate, the court
of appeals observed that under these circumstances, the trustee "should have obtained a turnover
order directing delivery to the trustee of the personalty." *Id.* In the instant case, not only did the

Debtor schedule the subject property, but the Trustee also obtained a court order authorizing the turnover and sale of the property in question.  In *Schlossberg*, another case cited by the Plaintiff, the court-appointed receiver was authorized by court order to seize assets belonging to a certain individual.  *Teton Millwork Sales v. Schlossberg*, 311 Fed. Appx. at 148.  Rather than seize the named individual's assets, the receiver, without court order, seized assets of a corporation of which the named individual was a 25% shareholder.  Not surprisingly, the court concluded that the receiver's actions were *ultra vires.  Id.* at 148.  Lastly, in *Lickman*, the plaintiff argued that the *Barton* doctrine did not apply because the chapter 7 trustee and her attorneys had conspired to defraud in the sale of estate property.  *In re Lickman*, 297 B.R. at 204.  The bankruptcy court rejected this argument, noting that the sale had occurred with court approval after notice and a hearing.  *Id.* at 205.  As stated by the court, the sale "was not and cannot be an ultra vires act. Instead, it squarely falls within the ambit and the protections of the *Barton* doctrine."  *Id.*

Notwithstanding this court's conclusion that the Plaintiff's filing of the state court action against the Defendants without prior approval from this court violated the *Barton* doctrine, dismissal is not mandated on this basis.  Removal of the state court suit to the appointing bankruptcy court cures a *Barton* doctrine violation.  *See Harris v. Wittman (In re Harris)*, 590 F.3d 730, 742 (9th Cir. 2009), *but see Herrera v. Gonzales (In re Herrera)*, 472 B.R. 839, 852-54 (Bankr. N.M. 2012) (rejecting the removal-cures-violation approach). As explained by the Ninth Circuit in *Harris*:

> [A]bsent leave of the appointing court, the *Barton* doctrine denies subject matter jurisdiction to all forums except the appointing court.  The *Barton* doctrine is a practical tool to ensure that all lawsuits that could affect the administration of the bankruptcy estate proceed either in the bankruptcy court, or with the knowledge and approval of the bankruptcy court.  The *Barton* doctrine is not a tool to punish the unwary by denying *any* forum to hear a claim when leave of the bankruptcy court is not sought.  When Harris's case was removed to the appointing bankruptcy court, all problems under the *Barton* doctrine vanished.

*Id.* at 742 (emphasis in original).

The *Harris* conclusion was implicitly followed by the courts in *Triple S Restaurants* and *Lowenbraun*, decisions which reached the Sixth Circuit.  *See In re Triple S Restaurants, Inc.,* 519 F.3d 575*; In re Lowenbraun*, 453 F.3d 314.  Both cases involved actions removed to bankruptcy court after having been commenced in state court in violation of the *Barton* doctrine, and in neither

21

case did the bankruptcy court summarily dismiss the lawsuit upon concluding that the *Barton* doctrine applied. *Id.* Rather, each court proceeded with a consideration of the plaintiffs' claims, with the court in *Triple S Restaurants* dismissing for failure to state a claim, 519 F.3d at 578-79, and the *Lowenbraun* court examining and determining the defendant's immunity defense. *In re Lowenbraun*, 453 F.3d at 322-23. Although the precise question of whether dismissal is required upon a violation of the *Barton* doctrine was not addressed, both decisions were affirmed by the court of appeals. Accordingly, the court rejects the assertion that violation of the *Barton* doctrine requires dismissal of this action.

Before turning to the alternative basis for the Defendants' dismissal motion, immunity, the court must first address Plaintiff's abstention request. As previously stated, the Plaintiff seeks discretionary or permissive abstention pursuant to 28 U.S.C. § 1334(c)(1), which provides, "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). At least one court has expressly concluded that absent approval by the appointing bankruptcy court under the *Barton* doctrine, abstention would be inappropriate because the state court would lack independent jurisdiction over the proceeding. *See Indus. Clearinghouse, Inc. v. MIMS (In re Coastal Plains, Inc.)*, 326 B.R. 102, 111 (Bankr. N.D. Tex. 2005) ("Pursuant to the *Barton* Doctrine, this Court has exclusive jurisdiction over this action, and thus abstention and remand would be inappropriate, even if the case were not dismissed."); *see also In re McKenzie*, 476 B.R. 515, 529 (E.D. Tenn. 2012) (citing *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 886-87 (B.A.P. 9th Cir. 1995), for the proposition that "the reason the party must seek leave of court [under the *Barton* doctrine] is because the non-appointing court lacks subject-matter jurisdiction").

The Sixth Circuit Court of Appeals has not expressly addressed the issue of whether a bankruptcy court may grant permissive abstention under 28 U.S.C. § 1334(c)(1) if there has been a violation of the *Barton* doctrine. However, in the similar context of remand,[9] the court in

---

[9] Section 1452(b) of title 28 likewise provides that "[t]he court to which such claim or cause
(continued...)

22

*Lowenbraun* found no error in the bankruptcy court's denial of the plaintiff's remand motion based on the conclusion that the plaintiff's failure to obtain leave to sue in violation of the *Barton* doctrine deprived the Kentucky court of jurisdiction. *See In re Lowenbraun*, 453 F.3d at 322. In reaching this conclusion, the Sixth Circuit cited *Pertuso v. Ford Motor Credit*, 233 F.3d 417, 426 (6th Cir. 2000), wherein the court held that a plaintiff's state law claims for unjust enrichment and an accounting, which claims "presuppose[d] a violation of the Bankruptcy Code," were preempted by federal bankruptcy law. Similarly, explained the *Lowenbraun* court, the presumption that a trustee and other bankruptcy professionals were acting within the scope of their duties "prevents a plaintiff . . . from making unsupported allegations in an attempt to defeat Congress's goal of providing exclusive federal jurisdiction over bankruptcy matters." *In re Lowenbraun*, 453 F.3d at 322 ("Congress intended for the Bankruptcy Code to be comprehensive and for the federal courts to have exclusive jurisdiction over bankruptcy matters"). From this discussion, the court concludes that it would be inappropriate to return a core proceeding to state court after a violation of the *Barton* doctrine because that court lacks jurisdiction. *See In re McKenzie*, 476 B.R. at 529 (noting that absent compliance with the *Barton* doctrine, the non-appointing court lacks subject matter jurisdiction). Accordingly, the Plaintiff's abstention request must be denied as a matter of law.

3. Immunity

Lastly, the Defendants assert that dismissal of this adversary proceeding is warranted because they have quasi-judicial or derived judicial immunity. Assertions of immunity may properly be

---

[9](...continued)

of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). "Factors to consider in deciding whether to equitably remand a case include: '1) duplicative and uneconomical use of judicial resources in two forums; 2) prejudice to the involuntary removed parties; 3) forum non conveniens; 4) the state court's ability to handle a suit involving questions of state law; 5) comity considerations; 6) lessened possibility of an inconsistent result; and 7) the expertise of the court in which the matter was originally pending.'" *Parrett v. Bank One, N.A. (In re Nat'l Century Fin. Enters., Inc., Investment Litigation)*, 323 F. Supp. 2d 861, 885 (S.D. Ohio 2004) (quoting *Mann v. Waste Mgt of Ohio, Inc*., 253 B.R. 211, 215 (N.D. Ohio 2000)). Although "[t]he analysis under § 1334(c)(1) is largely the same as under § 1452(b)," *id*., in this instance consideration of these equitable considerations is foreclosed under either statute because of this court's conclusion that the state court lacks subject matter jurisdiction to hear this action.

considered in a Rule 12(b)(6) motion to dismiss. *See, e.g., Weissman v. Nat'l Assn. of Sec. Dealers, Inc.*, 500 F.3d 1293, 1309 (11th Cir. 2007) ("There can be no doubt that a motion to dismiss under Rule 12(b)(6) is a proper vehicle to defeat a complaint that, on its face, cannot overcome an immunity defense."). A bankruptcy trustee is "entitled to broad immunity from suit when acting within the scope of his authority and pursuant to court order." *In re McKenzie*, 476 B.R. at 525. Moreover, as with respect to the *Barton* doctrine, court-appointed officers who represent the estate are similarly entitled to the immunity where "they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets." *In re DeLorean Motor Co.*, 991 F.2d at 1240. In response to the Defendants' immunity contention, the Plaintiff again raises his *ultra vires* argument, noting that "[a] trustee can be held personally liable . . . for acting outside the scope of his authority–that is, by engaging in an *ultra vires* act . . . ." *In re McKenzie*, 476 B.R. at 526 (citing *Illinois Dep't of Revenue v. Schechter*, 195 B.R. 380, 384 (N.D. Ill. 1996)). In fact, one such *ultra vires* act cited by the district court in *McKenzie* was "seizing property not owned by the bankruptcy estate. " *Id.* (citing *Leonard v. Vrooman*, 383 F.2d 556).

Assuming as true each of the allegations in the amended complaint as this court must do in the context of a motion to dismiss under Rule 12(b)(6), see *Ashcroft v. Iqbal*, 556 U.S. at 678, the court nonetheless concludes that all of the alleged conduct by the Defendants is protected by immunity. In the first, third, fourth, fifth, and sixth counts of the amended complaint, the Plaintiff alleges that the Trustee converted his property and that of his adult children by fraudulently filing a turnover motion rather than a Rule 7001 adversary proceeding, and by giving false testimony to the court as to ownership, thereby committing a fraud on the court. The Plaintiff alleges that these actions denied him due process in violation of the Tennessee Constitution and state criminal statutes against theft and embezzlement.[10] However, the property allegedly converted by the Defendants was

---

[10] As an aside, the court notes that to the extent the Plaintiff is attempting to hold the Trustee liable for crimes he is precluded from doing so. *See Bass Anglers Sportman's Soc'y of Am.v. Scholze Tannery, Inc.*, 329 F. Supp. 339, 345 (E.D. Tenn. 1971) ("alleged violations of criminal statutes may be enforced only by the proper prosecuting authorities and not by private parties"). For purposes of considering the Defendants' motion to dismiss, however, this court will construe the Plaintiff's claims liberally as tort claims. *See, e.g., Read v. Duck (In re Jacksen)*, 105 B.R. 542, 543 (B.A.P. 9th Cir. 1989) ("Pro se briefs are held to a less strict standard than those drafted by a lawyer. (continued...)

taken from the Plaintiff pursuant to court order.  Consequently, the Defendants are protected by absolute immunity in carrying out the terms of the order.  *See, e.g., Gross v. Rell*, 695 F. 3d 211, 216 (2d Cir. 2012) ("Bankruptcy trustees are generally immune to the extent that they are acting with the approval of the court."); *Gregory v. United States*, 942 F.2d 1498, 1500 (10th Cir. 1991) (bankruptcy trustee enjoys absolute immunity when executing "facially valid judicial orders"); *In re Weisser Eyecare, Inc.*, 245 B.R. 844, 848 (Bankr. N.D. Ill. 2000) ("Because trustees serve an important function as officers of the court, they enjoy . . . absolute immunity if operating pursuant to a court order.").

The foregoing legal principle is true, even it the court's order improperly included non-estate property as the Plaintiff alleges.  Absolute immunity excuses even allegations of bad faith, malice, or gross error.  *In re Heinsohn*, 231 B.R. at 66, n.12.  The alleged exception for property not owned by the bankruptcy estate, *see In re McKenzie*, 476 B.R. at 526 (citing *Leonard v. Vrooman*, 383 F.2d 556), does not apply in the instant case because the property was taken pursuant to court order, unlike the property seized in *Leonard.  See Leonard v. Vrooman*, 383 F.2d at 556.  Also in this regard, it is well settled that testimony given in court as well as statements made to a court in the course of litigation are protected by immunity, even if false.  *See Rashid v. Kite*, 934 F. Supp. 144, 147 (E.D. Pa. 1996) (doctrine of witness immunity "provides that witnesses are absolutely immune from suits arising from testimony given in the course of a judicial proceeding" and "[t]his immunity extends to pre-trial statements so long as they are related to proposed litigation").

In the second, seventh, and eighth counts of the amended complaint, the Plaintiff alleges that the Trustee fraudulently converted his property by threatening to prosecute the Debtor and the Plaintiff for bankruptcy fraud.  According to the Plaintiff, the Trustee's acts were illegal pursuant to a Tennessee statute criminalizing extortion, a violation of the Plaintiff's civil rights, and constituted an intentional infliction of emotional distress.  Under similar facts, the Sixth Circuit in *Lowenbraun* recognized that extrajudicial statements by a trustee to a newspaper suggesting that the

---

[10](...continued)
. . . Courts are to make reasonable allowances for pro per litigants and to read pro se papers liberally." (citations omitted)).

debtor and his wife had committed bankruptcy fraud were protected by immunity if the information was disseminated in good faith and served a proper public purpose. *In re Lowenbraun*, 453 F.3d at 323. The court of appeals affirmed the bankruptcy court's dismissal of the action based on the plaintiff's failure to offer any factual support for his conclusory allegations that the trustee had acted in bad faith. *Id.* Similarly, in the present case, the Plaintiff has alleged no facts that would support a claim of bad faith, merely conclusory statements.

Lastly, in the ninth count, the Plaintiff alleges that the Trustee and the Auctioneer conspired to liquidate the property converted from the Plaintiff and are therefore liable. However, as discussed with prior counts, the Defendants were acting pursuant to orders of this court in liquidating the property in question. Accordingly, they are protected by immunity.[11]

## V. Conclusion

An order will be entered in accordance with the foregoing denying the Plaintiff's request for

---

[11] On a final note, this court observes that all of the foregoing establishes that the Defendants have immunity from any attempt by the Plaintiff to hold them personally liable for their conduct that was authorized by court order, or within the scope of their official authority. To the extent that the court erred by authorizing the Defendants to sell non-estate property without following the proper procedures, an issue not before the court at this time, then relief may be available as a claim against the Debtor's estate. In making this statement, the court does not intend to revisit the sale of any property that was previously authorized. Moreover, it is highly questionable that this court has the authority to do so, as the court's rulings are before the Sixth Circuit Court of Appeals, depriving this court of jurisdiction over the matter pending further order of that court. *See Buesgens v. Bergman (In re Bergman)*, 397 B.R. 348, 351 (Bankr. E.D. Va. 2008) ("The rule is well established that the taking of an appeal transfers jurisdiction from the Bankruptcy Court to the Appellate Court with regard to any matter involved in the appeal and divests the Bankruptcy Court of jurisdiction to proceed further with such matters.").

The court simply observes that it, and presumably the Trustee, overlooked at the May 24, 2011 hearing that the Debtor had indicated in her amended Schedule B filed March 24, 2009, that the DeLorean and six of the seven Mercedes automobiles were jointly owned. However, from the state court complaint, the only automobiles that the Plaintiff alleges were converted because he had a joint interest in them were the DeLorean, a 1987 Mercedes, and a 1968 Camaro. Of these vehicles, only the DeLorean was scheduled by the Debtor as jointly owned. To the extent that the Plaintiff had an ownership interest in the DeLorean, he may have a claim against the estate for his portion of the sale proceeds.

remand and the granting the Defendants' motion to dismiss on the immunity issue.

# # #